MITCHELL ET AL., APPELLANTS, v. HUGHES, APPELLEE.

1. MARRIED WOMAN—TESTAMENTARY POWER.
At common law a *feme covert* was incapable of disposing of a freehold estate by will.
2. SAME.
Under the statutes of this state a married woman is, as against her husband, under disability to dispose of more than one half of her estate by will.
3. EQUITY JURISDICTION—PROBATE MATTERS.
A court of equity will not entertain jurisdiction to set aside the probate of a will unless some special and exceptional circumstances be averred which warrant the interference.
4. JURISDICTION OF COUNTY COURTS.
Original jurisdiction to admit a will to probate and to proceed to such final determination as shall settle the rights of all parties concerned is vested in the county courts.

*Appeal from the District Court of Weld County.*

Mr. B. L. CARR and Mr. F. P. SECOR, for appellants.

Mr. GEORGE S. ADAMS, for appellee.

BISSELL, J., delivered the opinion of the court.

By a bill which was good in form if it had been sufficient in substance, William Hughes, the appellee, sought to set

aside what purported to be the last will and testament of one Jane Hughes, known at the time of her death as Jane Mesclon. In its substantial averments the complaint set forth a marriage on the 20th day of April, 1870, between Hughes and the decedent, who was then Jane Stevens, and alleged the continued existence of the marriage relation to the time of her death on the 13th day of August, 1887. The will bore date the 9th of April, 1886, and bequeathed all of the estate of the decedent, both real and personal, to Rachel Hillier, her daughter. After the death of the devisor, and on the 11th of October, 1887, the will was presented for probate to the county court of Weld county, and was duly probated. There is no question concerning the regularity of the proceedings in that tribunal, the qualification of the executors, and their entry upon the discharge of their duties. Mitchell and Probert were appointed guardians of the minor devisee, Rachel E. Hillier. They took possession of all the decedent's property. When this suit was started they were managing the estate, collecting its rents, issues and profits, and disposing of it according to the terms of the will. Hughes prayed that the will be set aside and he be decreed the sole heir, and entitled to the immediate possession of all the property, for an accounting and general relief.

The defendants by their answer denied all the material averments of the complaint and then set up an affirmative defense which substantially stated that Hughes and the decedent Jane lived together and cohabited as man and wife for about a year in the state of Pennsylvania, when Hughes deserted her and came to Colorado to live. Jane followed him to the state within a year, when they resumed their apparent relations of husband and wife, and continued to live in that fashion for about six months. In 1872, Hughes again deserted her and removed to Illinois, where he remained until after her death in 1887. This plea likewise set up a marriage and cohabitation between Hughes and another woman, with whom he lived until he brought this suit. It was averred that the desertion in 1872 was absolute and final; that the

wife had never heard of or from Hughes from that time to the day of her death; that he failed to contribute to her support; and generally stated that he continued in good health and possessed of his full earning capacity. During all those years of separation the decedent carried on business as a *feme sole*, and accumulated all the property which she attempted to dispose of by her last will and testament.

The plaintiff moved to strike out the affirmative defense and it was eliminated from the pleading. The defendants moved to dismiss the action. This motion was argued and denied. Leave was then given to the plaintiff to amend, and he inserted an allegation that he was never served with process, and did not appear at the probate of the will in the county court. Thereafter the defendants withdrew their general denial and demurred to the amended complaint. The demurrer was overruled, and a decree was entered declaring the will to be null and void, and setting aside the proceedings for its probate in the county court, and ordering costs against Mitchell and Probert.

Neither the complaint nor the answer were sufficient in substance. The demurrer to the complaint ought to have been sustained. The limitations on the power of a *feme covert* at the common law to dispose of her property by will are well established. Aside from property which might be put in the hands of trustees subject to her testamentary disposition, any will made by a married woman which disposed of freehold estates was entirely void. Several exceptions were ingrafted on this limitation. According to the earlier cases, if a woman lived alone and transacted business as a *feme sole*, her husband at the time having been banished, or having abjured the realm, she was permitted to exercise many of the rights enjoyed by a *feme sole*. She could sue and be sued, was held liable for her debts, and on her commercial paper might maintain necessary actions for the protection of her freehold estates, and at her death might dispose of the property of which she died seized. Coke on Littleton, vol. 1 (1st Am. ed.), § 200; *Countess of Portland v. Prodgers*, 2 Vern.,

p. 104; *Derry v. Duchess Mazarine*, 1 Ld. Raym. 147; *Newsome v. Bowyer*, 3 Peere Wms. 37.

By an insensible process of extension, resulting probably. from a misapprehension of the basis of the principle of abjuration, the doctrine was applied to cases in which originally it was without force. Some of the English cases, as well as some of the early ones in this country, conceded to the *feme covert* the power of testamentary disposition, the power to bring suit and to contract commercial obligations, where the husband was out of the country and maintained none of the ordinary marital establishments, and exercised none of his conjugal rights. *Gregory v. Paul*, 15 Mass. 30; *Troughton Adm'rs v. Hill's Ex'rs*, 2 Hayward's Rep. 614; *Cornwall v. Hoyt*, 7 Conn. 420.

The later decisions, which reviewed most of the cases establishing a different rule, re-established the principle which inhibits a *feme covert* from doing those things as to which she was originally under disability by reason of her coverture, unless the established exceptions springing from banishment, technical abjuration or war between the different nations of their residence and allegiance were clearly shown. *Marshall v. Rutton*, 8 Durn. and East, 297; *Boggett v. Frier et al.*, 2 East, 300; *Robinson v. Reynolds et al.*, 1 Aiken (Vt.) 174; *Williamson, et al., v. Dawes*, 9 Bing. 292; *Deah v. Richmond*, 5 Pick. 461; *Vreeland's Ex'rs v. Ryno's Ex'r*, 26 N. J. Eq. 160.

It may thus be taken to be tolerably clear that unless the rule be varied by some facts other than what appear on the face of the present complaint, the decedent could not at the common law execute a will disposing of her estate. If the will is to be supported under the statutes of Colorado, she is likewise under disability to dispose of the whole of it. Her statutory testamentary power is limited to the disposition of one half of her estate as against her husband, if he be living at the time of the execution of the will. These concessions, however, do not operate to support the complaint. The common law rule which deprived the *feme covert* entirely of

·testamentary power is inoperative in Colorado, since the statute expressly gives the right to the married woman to dispose of one half of her property, dying while married. Since this power is possessed by the *feme covert*, the only effect resulting from the execution of a will which disposes of all of her property without recognition of the husband's rights, is to render it invalid as to the one half of the estate, and to subject all legacies to a proper and *pro rata* deduction. *Logan v. Logan*, 11 Colo. 44; *Doane v. Lake*, 32 Me. 268.

It follows that the decree which set aside the will and the proceedings for the probate of it in the county court was entirely erroneous and cannot be sustained. According to what is contained in the record the will may have been entirely valid. The proceedings certainly must be presumed to be regular in the absence of any showing to the contrary. To reverse the decree for these errors alone would not result in an accurate disposition of the controversy. It must be reversed with directions to the court below to dismiss the complaint. This necessity springs from the absence of juris-·diction in the district court under the case as laid to enter any decree whatsoever in the premises. It is the general rule well established in this country that a court of equity will not entertain jurisdiction of a suit to set aside a will and proceedings for its probate, unless some special circumstances be averred by reason of which the general equitable jurisdiction of courts will attach. According to our constitution and the statutes which have been enacted to carry out its provisions, county courts are courts of probate, fully clothed with original jurisdiction to hear and determine all this class of controversies, and to proceed to such final determinations as shall settle the rights and interests of all parties concerned. It is not necessary to go to the extent of holding that the jurisdiction conferred by the constitution is exclusive, nor to the limit of the rule sometimes enunciated that courts of equity generally are without jurisdiction in the premises; but the conclusion can be safely rested upon the principle to which all courts subscribe that no bill for such purposes will

be entertained unless it presents some special features, or the case involves some exceptional circumstances which warrant the interference of the court upon some well recognized basis of equitable jurisdiction. Pomeroy's Eq. Jurisprudence, vol. 1, § 349; *Case of Broderick's Will*, 21 Wall. 503; *Chipman, et al., v. Montgomery, et al.*, 63 N. Y. 221; *Heirs of Adams v. Adams, et al.* 22 Vt. 50.

There was no allegation in the complaint which even tended to bring the present case within the limits of that well settled doctrine. The only substantial averments upon which the jurisdiction of the court was made to depend were those stating the marriage, the execution of the will, the death of the devisor, and the proceedings in probate. Evidently of themselves these facts suggest none of the divers grounds which are recognized as legitimate bases of equitable interference.

It is urged that the plaintiff did not prove that he was legally married to Jane Stevens. None of the evidence is before the court. It is not possible, therefore, to say whether the complainant offered that strict proof of marriage, valid by the laws of the state where it was entered into, which is essential to uphold the finding on that subject.

It is exceedingly doubtful whether the answer filed on behalf of the devisor and the executors would admit proof of what was alleged by way of defense. It contained many averments which if supported by other proper allegations might possibly have brought it within the principle of some of the adjudicated cases. *Vide Abbott v. Bailey*, 6 Pick. 89; *Gregory v. Pierce*, 4 Metc. 478; *Arthur v. Israel*, 15 Colo. 147.

It is not deemed necessary to precisely settle this question or determine the particulars with respect to which the affirmative defense was apparently insufficient. It was stricken out of the pleading, the balance of the answer was withdrawn, and a demurrer was interposed to the complaint, and on this the defense rested. What has been said with reference to it springs from the apparent importance attached to it in the

arguments by counsel.    While the question may possibly re-arise in the county court, if the appellee still has a right to proceed in that forum, the facts on which the defense must rest are not sufficiently before the court to warrant an expression of a definite opinion on their sufficiency as a defense to the proceeding.

For the reasons expressed, the judgment of the court overruling the demurrer will be reversed and the cause remanded, with directions to the court below to dismiss the complaint at the costs of the plaintiff.

*Reversed.*