COMMUNITY STATE BANK *v.* NORMAN ET AL.

[No. 17,829. Filed December 10, 1948. Transfer denied
February 23, 1949.]

*Ralph W. Probst,* of Kendallville; and *Atkinson & Sanders,* of Auburn, for appellant.

*James P. Murphy, Ramon S. Perry, L. H. Dunten, Heaton & McClain, Chas. H. Stamm, Allen C. Lomont* and *Wm. L. Burger,* all of Fort Wayne; and *Mountz & Mountz;* and *Brinkerhoff & Brinkerhoff,* all of Garrett, for appellees.

ROYSE, P. J.—The appellees William C. Norman and Elva G. Norman were married on the 23rd day of June, 1945. (Hereinafter they will be referred to as husband and wife.) The husband operated two milk routes in Allen and DeKalb Counties. On or about the 29th day of October, 1945, the husband, being indebted to appellant in the sum of $2450, executed his note for said sum payable to appellant and to secure the payment of said note executed and delivered to appellant a certain chattel mortgage wherein he set out a certain route No. 2100, Pet Milk Co., Garrett, Indiana; one 1946 1½ ton Ford Truck No. 691402 with approved milk hauling body; and fifty 10-gallon milk cans. By the terms of the mortgage appellee Pet Milk Company was to pay directly to appellant 25%

of the gross milk hauling commission every two weeks. The mortgage was duly recorded in the office of the Recorder of Allen County which was at the time the residence of the husband.

On June 28, 1946, the wife brought, in the DeKalb Circuit Court, an action for divorce and a restraining order against the husband. On the same day said Court issued a restraining order against the husband restraining him from disposing of, selling or encumbering any or all property of the parties, or from molesting or interfering with her. On July 3, 1946, the husband, through his attorneys, filed his affidavit for a change of venue from the regular judge of said court. On July 10, 1946, the husband and wife, by agreement of their attorneys in open court, had their respective attorneys, the appellees Dunten and Perry (hereinafter referred to as Receivers) appointed receivers of the property of the husband and wife. On the same day the court granted the request of the receivers to operate the milk route, farm, etc. of said parties.

On December 13, 1946, the receivers filed in said court their petition to sell said milk route and Ford truck. This petition averred that appellant has and claims a chattel mortgage on said property and asks that it be made a party to this action to answer to its interest therein. The petition further averred the appellees Nicolai, Sinke, Firestone Tire and Rubber Company, and Pet Milk Company claim some interest in said milk route, truck and milk cans, and made them parties to answer to their interests. It reported that after advertising said property the appellee Pet Milk Company had made an offer of $2850 for said property, which was the best offer said Receivers had received. Summons was issued to said parties returnable December 28, 1946.

On December 23, 1946, the husband withdrew his motion for a change of venue from the Judge. On December 24, 1946, after trial, the court granted the wife a divorce. The proceedings in the receivership were continued.

On January 21, 1947, appellant filed its demurrer to the receiver's petition to sell the personal property. The grounds for the demurrer were as follows:

"No. 1. That the Court has no jurisdiction of the subject-matter of this kind of action in this kind of case.

"No. 2. That the Court has no jurisdiction of the person of this defendant.

"No. 3. That the said Receivers never had any legal right to seize and now attempt to sell the personal property described in said petition.

"No. 4. That said petition does not state facts sufficient to constitute a cause of action against this defendant."

The memorandum in support of said demurrer stated, in substance, no summons was ever served upon appellant relative to the appointment of said receivers who seized the property knowing appellant held a first and prior chattel mortgage thereon; that appellant has never been a party to said proceedings or joined therein. The demurrer was overruled. On the same day, by agreement of all the parties and without prejudice to the rights of any creditor herein, or as set out in said demurrer, it was agreed to sell said property free from liens of any creditor. The court's order approving the sale specifically provided "the liens of all creditors shall attach to the proceeds to be derived from said sale in accordance with their relative priorities to be hereafter determined by said Court." Subsequently, appellees Pet Milk Company, Firestone, Nicolai, Sinke and Hatcher filed claims asserting a preference over

appellant for services rendered or material furnished to the Receivers during the time they operated the business.

Appellant filed an answer in two paragraphs, the first of which averred it was not a party to the original action; that it is without information as to any of the allegations set out in the Receivers' petition, except it holds a first and prior mortgage on the property sought to be sold. The second avers that at all the times referred to in Receivers' petition appellant held a valid first and prior mortgage upon said property, which was duly recorded in Allen County and was so recorded a long time prior to the appointment of said Receivers. It further avers that at the time of their appointment said Receivers knew said property was covered by said mortgage; that appellant never at any time appeared in court in this action, either voluntarily or otherwise; that the appointment of said receivers was without its knowledge or consent; it never acquiesced therein, and refuses to be bound thereby.

Appellant filed a cross-complaint averring the execution of the mortgage and further alleging that appellee Pet Milk Company, for several months after the appointment of said receivers, paid to appellant the sums due under the terms of the mortgage. It averred the appointment of the receivers and their subsequent operation of the business was without their knowledge, consent or approval; that the claims of said appellees are second and junior to its claim. Appellant also moved to strike out the claims of said appellees.

The trial court, by its judgment, fixed the priorities of the parties in the following manner:

"First: Hatcher Motors, Inc., in the sum of $259.06, together with $63.86 Dollars as Attorney Fees, and

"Glenn E. Nicolai in the sum of $123.68, together with $43.55 Dollars as attorneys' fees.

"Second: The costs of this proceeding, including the sum of $125.00 Dollars to Ramon S. Perry and the sum of $125.00 Dollars to L. H. Dunten as Receivers.

"Third: Sinke Motor Sales in the sum of $614.61.

"Firestone Tire & Rubber Co. in the sum of $305.59, and

"Pet Milk Company in the sum of $104.28. .

"Fourth: The balance of said proceeds shall be applied toward the payment of said claim of said Community State Bank."

Appellant filed this appeal in the Supreme Court. Pursuant to § 4-217, Burns' 1946 Replacement, this cause' was transferred by the Supreme Court to this Court. The appellant was not a party to the original action in which the receivers were appointed, and as a mortgage creditor it could not be so aggrieved by the order of appointment as to entitle it to appeal under § 3-2603, Burns' 1946 Replacement. Therefore, we will not consider any question relating to the appointment of the receivers herein.

Presented in several ways, there is but one real question in this appeal, viz., Did the trial court err in not placing the appellant first in the order of priorities?

It is a well-recognized general rule in this state that a duly executed and recorded chattel mortgage is valid and binding as against the rights of third persons subsequently acquired. *Personal Finance Co. of Hammond, Indiana, Inc.* v. *Flecknoe et al.* (1940), 216 Ind. 330, 334, 24 N. E. 2d 694. However, as pointed out at pages 338, 339 in the opinion of the Supreme Court, this rule does not apply under the following circumstances:

"(1) where the repairs would constitute a real benefit to the mortgagee by preserving the chattel covered by the mortgage, (2) where the mortgagee had a beneficial interest in the continued use of the mortgaged chattel and the repairs were necessary to such continued use, or (3) where the mortgagee had actual knowledge of the repairs being made or there were circumstances, or language in the mortgage, from which such knowledge could be presumed. An artisan claiming priority for his lien must bring his case within *one* of these classes." (Our emphasis).

See also, *Grusin* v. *Stutz Motor Car Company of America* (1934), 206 Ind. 296, 301, 187 N. E. 382.

In our opinion there was evidence from which the trial court could have found or reasonably inferred the following facts: That the services performed by the appellees Hatcher, Nicolai, Sinke, Firestone and Pet Milk Company were a real benefit to appellant because they were necessary to preserve its chattel. It is undisputed that appellant had a beneficial interest in the operation of the milk route and that it was essential to such operation that the truck be used daily on said route, and that the services performed by the last mentioned appellees were necessary to such use. The appellant, from at least shortly after the appointment of the receivers, not only knew but acquiesced in the operation of the milk route by such receivers; that it discussed such operation with the receivers and at no time during such operation asserted or attempted to assert its right to foreclose its mortgage. Therefore, the trial court did not err in its judgment giving precedence to the claims of the last mentioned appellees over the claim of appellant.

Appellant next contends the trial court erred in giving precedence over its claim to the costs of the

receivership action, including the fees of the receivers. We cannot agree with this contention. In 53 C. J., Receivers, § 425, p. 253, the rule is stated as follows:

"Where a receiver is lawfully appointed at the instance and for the benefit of lien creditors, all proper charges, expenses, and liabilities incurred as incident to duly conferred receivership powers and duties are a charge upon the earnings and corpus of the property superior to the lien creditors, who take part in, or expressly or impliedly consent to, or acquiesce in, the receivership proceedings. . . . Similarly, the expenses of operation of business are prior to the claims of lienors, who have acquiesced in, agreed, and consented to, the appointment of a receiver and operation of the business by him, although they have not actively procured the appointment."

In 45 Am. Jur., Receivers, § 277, p. 215, it is stated:

"Where a mortgagee sits quietly by and permits a receiver to administer the mortgaged property, without asserting his prior rights, the receivership expenses may be made chargeable against the mortgaged property to the same extent as against all the property in receivership, or such expenses may be taxed against him in proportion to his interest therein."

Finally, for the reasons herein set out, the trial court did not err in overruling appellant's motion to modify the judgment by giving its claim precedence over the claims of the appellees.

We do not determine the correctness of the order of priorities as determined by the trial court. We do hold the order of priorities as fixed did not infringe upon the rights of appellant.

Judgment affirmed.

NOTE.—Reported in 82 N. E. 2d 705.